IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DAWN HARTLEY-CULP,** : | 3:14cv200 |
| individually and on behalf of all : | |
| others similarly situated, : | (Judge Munley) |
|       **Plaintiff** : | |
| : | |
|   v. : | |
| : | |
| **GREEN TREE SERVICING, LLC;** : | |
| **FEDERAL NATIONAL MORTGAGE** : | |
| **ASSOCIATION FANNIE MAE and** : | |
| **RESOLVE SOLUTION SERVICES** : | |
| **CORPORATION;** : | |
|       **Defendants** : | |

::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::::

### MEMORANDUM

Before the court for disposition is Defendant Federal National Mortgage Association Fannie Mae's (hereinafter "Fannie Mae") motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). The matter has been fully briefed and is ripe for disposition. For the reasons explained below, the court will deny Fannie Mae's motion.

**Background**

The instant case arises from automated phone calls placed to plaintiff's cellular telephone, which plaintiff alleges were a violation of the

Telephone Consumer Privacy Act (hereinafter "TCPA"), 47 U.S.C. § 227 et seq. (Doc. 26, Pl.'s Second Am. Compl. (hereinafter "Compl.") ¶ 1).

Beginning on August 29, 2013, plaintiff received at least twenty-six (26) phone calls from Defendant Resolve Solution Services Corporation (hereinafter "Resolve"). (Id. at 4). The calls conveyed a pre-recorded message addressed to a person named Lee Culp, in which the speaker stated, "Resolve is calling on behalf of Freddie Mac regarding your Green Tree Servicing LLC mortgage loan..." (Id.) Plaintiff informed defendants that they were placing calls meant for Lee Culp to her number, but the calls continued. (Id. at 5). At no time did plaintiff provide her cellular telephone number or any other personal information to any of the defendants, and she has never been a customer of Green Tree Servicing LLC (hereinafter "Green Tree"). Plaintiff did not consent to any of the defendants calling her. (Id.)

Plaintiff initiated the instant action on February 5, 2014 (Doc. 1), and filed the current amended complaint (Doc. 26) on May 21, 2014. Defendant Green Tree answered on June 4, 2014. (Doc. 31). Plaintiff filed a motion for class certification on June 6, 2014. (Doc. 33). That motion was stayed on June 24, 2014 (see Doc. 35), pending disposition of

Defendant Fannie Mae's motion to dismiss, filed June 18, 2014 (Doc. 34).

**Jurisdiction**

Because this case is brought pursuant to the TCPA, 47 U.S.C. § 227 et seq., the court has jurisdiction pursuant to 28 U.S.C. § 1331. ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

**Standard of Review**

The court tests the sufficiency of the complaint's allegations when considering a Rule 12(b)(6) motion. All well-pleaded allegations of the complaint must be viewed as true and in the light most favorable to the non-movant to determine whether, "'under any reasonable reading of the pleadings, the plaintiff may be entitled to relief.'" Colburn v. Upper Darby Twp., 838 F.2d 663, 665-66 (3d Cir. 1988) (quoting Estate of Bailey by Oare v. Cnty. of York, 768 F.2d 503, 506 (3d Cir. 1985)). The plaintiff must describe "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' [each] necessary element" of the claims alleged in the complaint. Phillips v. Cnty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556 (2007)). Moreover, the plaintiff must allege facts that "justify moving the

case beyond the pleadings to the next stage of litigation." Id. at 234-35. In evaluating the sufficiency of a complaint the court may also consider "matters of public record, orders, exhibits attached to the complaint and items appearing in the record of the case." Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994) (citations omitted). The court does not have to accept legal conclusions or unwarranted factual inferences. See Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc., 450 F.3d 130, 133 (3d Cir. 2006) (citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997)).

  The federal rules require only that plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief," a standard which "does not require detailed factual allegations," but a plaintiff must make "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d 636, 646 (3d Cir. 2009) (citations and internal quotations and quotation marks omitted). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

**Discussion**

Defendant Fannie Mae urges three arguments for dismissal: (1) Fannie Mae did not place the calls at issue, and therefore cannot be held liable under the TCPA; (2) plaintiff fails to allege that Fannie Mae is vicariously liable for Resolve's alleged violations of the TCPA; and (3) Fannie Mae cannot be held vicariously liable for the actions of an agent under Federal Crop Insurance Corporation v. Merrill, 332 U.S. 380 (1947). The court will address each of these arguments in turn.

**I. Liabilty Under the TCPA**

Fannie Mae first asserts that the TCPA imposes liability only upon those who actually place the calls prohibited under the statute. Fannie Mae relies upon Mais v. Gulf Coast Collection Bureau, Inc., 944 F. Supp 2d 1226 (S.D. Fla. 2013), which rejected a Federal Communications Commission (hereinafter "FCC") ruling to the contrary. Plaintiff's reliance on Mais is misplaced.

Section 227(b)(1)(A)(iii) of the TCPA states, in relevant part, that:

> [i]t shall be unlawful for any person within the United States . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . .

>cellular telephone service . . . or any service for which the called party is charged for the call.

With respect to this section of the TCPA, the FCC has ruled that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call." In re Rules Implementing the Tel. Consumer Prot. Act of 1991 (hereinafter "FCC Ruling"), 23 FCC Rcd 559, 565 (F.C.C. 2007).

In Mais, the court determined that it had jurisdiction to review and reject the FCC's ruling. No other federal district court, besides the Mais court, has concluded that district courts have jurisdiction to review FCC rulings, and with good reason. See Chavez v. Advantage Group, 959 F. Supp. 2d 1279 (D. Colo. 2013). Congress has granted federal courts of **appeals** "exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . all final orders of the Federal Communications Commission made reviewable by section 402(a) of Title 47." 28 U.S.C. § 2342(1). In the process, the Mais court essentially ignored this provision, construing the jurisdictional grant so narrowly as to render it meaningless, before reviewing and rejecting the FCC ruling.

See Mais, 944 F. Supp 2d at 1235-1239.  The Mais court also dismissed Supreme Court precedent stating that "exclusive jurisdiction for review of final FCC orders . . . lies in the Court of Appeals."  FCC v. ITT World Comms., Inc., 466 U.S. 463 (1984).  This court will instead follow these binding precedents, and decline Fannie Mae's invitation to follow the Mais court's reasoning.

Fannie Mae's Reply Brief (Doc. 37) attempts to reframe the argument to say that Fannie Mae cannot be held *directly* liable under the TCPA.  Under the plain language of the FCC ruling, however, this is incorrect.  The ruling states that "[c]alls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call."  FCC Ruling at 565.  The FCC clearly ruled that the creditor is placed "in the shoes" of the caller for purposes of liability under the TCPA's autodialing provisions.

Further, as Fannie Mae concedes, numerous other courts have held that § 227(b)(1)(A) does impose liability upon a showing of vicarious liability as well.  See, e.g., In re Jiffy Lube Int'l, Inc., Text Spam Litig., 847 F. Supp. 2d 1253, 1257 (S.D. Cal. 2012) (citing "the rule of statutory construction that makes explicit vicarious liability unnecessary," in holding

7

that "congressional tort actions [including the TCPA] implicitly include the doctrine of vicarious liability"); Accounting Outsourcing, LLC v. Verizon Wireless Pers. Commc'ns., L.P., 329 F. Supp. 2d 789 (M.D. La. 2004) (same); Thomas v. Taco Bell Corp., 879 F. Supp. 2d 1079, 1084 (C.D. Cal. 2012) ("Absent a clear expression of Congressional intent to apply another standard, the Court must presume that Congress intended to apply the traditional standards of vicarious liability . . . ."). The Court sees no reason not to adopt the same conclusion here.

Therefore, we hold that the TCPA can impose liability directly or vicariously upon any person or entity on whose behalf a third party places a call in violation of § 227(b)(1)(A).

**II. Vicarious Liability in the Second Amended Complaint**

Fannie Mae next argues that plaintiff has not sufficiently plead an allegation of vicarious liability. Because we have held that Fannie Mae could be held directly liable under the TCPA, a failure on plaintiff's part to plead vicarious liability would not carry the day for Fannie Mae, but merely narrow the theories for liability under which plaintiff could proceed.

To support this argument, Fannie Mae derides plaintiff's allegations as "only conclusory, boilerplate references to Resolve placing calls 'on

behalf of' Fannie Mae." (Reply Br. at 11). Plaintiff's pleading, however, was more thorough and complete than Fannie Mae's quoting of it. Plaintiff avers that "Defendant Resolve left such voice messages on Plaintiff's cellular phone, on Defendant Fannie Mae and Defendant Green Tree's behalf, **at their direction, and under their control**," and "Defendant Resolve left multiple (subsequent) similar voice-messages on Plaintiff's cellular phone, Defendant Fannie Mae and Defendant Green Tree's behalf [sic], **at their direction, and under their control**." (Compl. ¶¶ 13, 15) (emphasis added). This pleading, by itself, is enough to state a claim, plausible on its face, that Fannie Mae is vicariously liable for the phone calls made by Resolve. See Ashcroft v. Iqbal, 556 U.S. at 678.

Moreover, these allegations are not mere "conclusions," as Fannie Mae asserts, because plaintiff included a transcript of the Resolve caller's voice message. That message stated that the speaker was calling "on behalf of Fannie Mae," and that "[h]elp from Fannie Mae is available but you must return our call." (Compl. ¶ 14). These facts certainly rise to the standard of "a showing, rather than a blanket assertion, of entitlement to relief that rises above the speculative level." McTernan v. N.Y.C., 564 F.3d at 646.

9

**III. Merrill**

Fannie Mae's last argument for dismissal is that <u>Federal Crop Insurance Corporation v. Merrill</u>, 332 U.S. 380 (1947) prohibits holding a federal instrumentality liable for the actions of its agents or independent contractors that the instrumentality has not expressly authorized. Fannie Mae cites to <u>Hinton v. Federal National Mortgage Association</u>, 945 F. Supp. 1052, 1060 (S.D. Tex. 1996) for their interpretation of "the <u>Merrill</u> Doctrine." Neither of these cases is relevant to the instant case.

Neither <u>Merrill</u> nor <u>Hinton</u> involved circumstances wherein the agent of a federal instrumentality committed a statutory tort of the kind alleged here. Those cases involved the question of whether the federal government could be equitably estopped from disavowing an agreement, which ran contrary to the relevant agency's governing law, where a third party relied upon a misrepresentation of an agent in making the agreement.

The holding of <u>Merrill</u>, as stated in that case, is that "anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority." 332 U.S. at 384. The Supreme

Court later described Merrill as "the leading case in our modern line of estoppel cases," and described its holding as rejecting the argument that an agent's misinformed representations estopped the federal government to deny insurance benefits. Office of Pers. Mgmt. v. Richmond, 496 U.S. 414 (1990).

The Third Circuit has relied upon Merrill in holding that the government cannot be held liable for acts of employees or agents when those acts were within the scope of the agents' authority, even if the plaintiff did not know the agent was acting outside that scope of authority, Crisci v. United States, 407 F. App'x 573, 578 (3d Cir. 2010), and that a party insured by the federal government must strictly comply with all terms and conditions of the law that governs that insurance, Suopys v. Omaha Prop. & Cas., 404 F.3d 805 (3d Cir. 2005).

None of these authorities suggest that Merrill applies outside the context of a contractual relationship, let alone that of a statutory tort. And, even if it did, plaintiff alleges that Fannie Mae's agent, Resolve, placed the calls at the direction and under the control of Fannie Mae. Therefore, plaintiff claims that the actions of the agent were authorized, circumstances under which, even if Merrill controlled, liability would attach.

Finally, as we held above, the FCC's rule means that Fannie Mae can be held directly liable for the violations of the TCPA alleged here, again rendering Merrill inapposite.

The contours of the liability asserted by plaintiff with respect to Fannie Mae are as of yet unclear, and require factual discovery to flesh out.  It may be that those facts will not bear out the plaintiff's claims.  Viewing the allegations currently before the court as true, however, plaintiff has satisfied her burden at the pleading stage to state a claim, plausible on its face, upon which relief could be granted.

**Conclusion**

For the reasons stated above, Defendant Fannie Mae's motion to dismiss will be **DENIED**.  An appropriate order follows.


**DATE:10/10/14**                              **s/ James M. Munley**
                                               **JUDGE JAMES M. MUNLEY**
                                               **United States District Court**